**WIER v. COE, Com'r of Patents.**

No. 66476.

District Court of the United States for the District of Columbia.

April 19, 1940.

Jennings Bailey, Jr., of Washington, D. C. (Hans V. Briesen, of New York City, of counsel), for plaintiff.

W. W. Cochran and E. T. Newton, of the Patent Office, both of Washington, D. C., for defendant.

LUHRING, Justice.

The bill of complaint is filed pursuant to 35 U.S.C. § 63, 35 U.S.C.A. § 63, and seeks the issuance of a patent for improvements in Method and Means of Identifying Parts of a Musical Score.

The alleged invention relates to multipage units comprising consecutive sheets bearing recorded musical compositions. It is more particularly concerned with the identification, in connection with such unit, in a manner instantly appreciable by the eye, of the whole of each of the several themes upon which the musical composition is built up.

The improvement consists in providing indications, such as arrows, legends and jagged lines, so that the beginning and end of a theme sequence may be determined and the principal instrument carrying the specific theme indicated.

All the claims in issue, 1, 2, 8, 9, 12, 13, 15 and 16, were rejected by the Examiner and on appeal the Board of Appeals affirmed.

Claims 1, 2, 8, 12, 15 and 16 are drawn to the article, that is the printed sheet or sheets. Claims 9 and 13 are drawn to the method of identifying the continuity of a "theme sequence" and a "theme," respectively. The identification of the continuity of the theme sequence or theme is accomplished by "locating" the theme sequence or theme on the musically staffed sheets, and "impressing" a series of indices thereon, such as arrows and jagged lines, in order that a person examining the sheets of music may readily see and determine the beginning and extent of the theme sequence.

The Examiner rejected claims 1, 2, 8, 12, 15 and 16, the article claims, on the ground that the "musically staffed sheets" were unpatentable over the conventional sheet music having the well known, and arbitrary signs and indicia on the several sheets for the guidance of the performer, and which are continued on the successive sheets. The Examiner held that the selection of the indicia used was a matter of judicious choice only and did not amount to invention.

As to claims 9 and 13 drawn to the method of identifying the continuity of a "theme sequence" and a "theme," the Examiner pointed out that the "identifying" consisted simply in applying the arrows and jagged lines to the printed sheet or sheets, and considered the claims drawn to the process of producing the printed sheets.

The claims were held to be unpatentable on the authority of Ex parte Trevette, 1901 C.D. 170.

The plaintiff makes use of arrows to direct attention of the observer from one point to another, and he employs jagged lines to indicate continuity. It is well known that the use of arrows or similar marks or continuous lines (underscoring) is continually resorted to in pointing out pertinent paragraphs or portions of a theme or subject on pages of printed matter for ready reference or to avoid confusion. It is also common in printed matter to emphasize or draw attention to certain passages, by printing the same in italics, heavy type, or in ink of a different color.

The patent to Sheffield, May 29, 1923, No. 1,456,834, illustrates the use of different kinds of type to show the structure of sentences and the exact relation of their syntactic elements to each other so as to enable the intended meaning of sentences to be readily ascertained.

The asterisk * is used frequently in printing and writing to mark a word or phrase as having a special character, etc., or to direct attention to a particular passage. Everyone is familiar with the index mark or "fist" of the printer to direct special attention to the passage which follows. The plaintiff's arrows are used to indicate either the beginning of a theme and the instruments which carry it or also the transfer during the continuance of the theme from one instrument to another. The "fist" may be used for the same purpose.

Certain well known and arbitrary signs are used in writing and printing music, among which may be cited tr 〰〰 to indicate a trill, and also the tie mark to indicate that the note is carried over, and also that a note begun on one sheet is carried on to the next sheet. Indeed, the plaintiff's jagged line is but an enlargement of the jagged line of the trill symbol.

The plaintiff, testifying as a witness, merely elaborated upon the specifications of the patent application. His testimony abounds in hearsay, and he was unable to testify with any degree of certainty the extent to which his invention has met with commercial success.

The court was furnished with photostat copies of various reviews by musical critics, in which the work is characterized as "highly ingenious," a "unique product," "remarkable," "clever," etc. These reviews express the opinion of the writers, and were before the Patent Office tribunals.

The court is of opinion and so finds that in using printed indicia to aid the reader of an orchestral score, the plaintiff did nothing rising to the dignity of invention, in view of the common and widespread use of indicating marks in all sorts of printed matter.

The court further finds that the claimed series of musically staffed sheets are merely printed matter for conveying intelligence. They do not involve physical structure and are not subject matter which may be protected under the patent laws.

Counsel for plaintiff rely upon application of Sheffield, 53 App.D.C. 109, 288 F. 463, as authority for the allowance of the claims in issue. It is rather an example of the prior art. The plaintiff has adapted the concept there disclosed to the musical score.

Sheffield in his disclosure stated that his "invention contemplates so printing the sentence that the different kinds of type employed will enable the reader to distinguish at a glance not only the different syntactic elements of a sentence and thus know at once whether a verb is dependent or independent, whether a noun is a subject or an object, whether a group of words is a noun clause, and the like, but also will show at a glance the relations existing between the various elements in the sentence structure."

The plaintiff in his disclosure states: "It will readily be noted that the invention provides a method of separately identifying the themes and their recurrence, the extent of the themes, the principal instruments performing them, and the continuity of each theme as rendered by different groups of the ensemble. Thus an arrangement of a musical score is provided by which there appear on successive pages, where appropriate, indicating marks identifying the various sections and themes so that any student capable of appreciating the score may be enabled to distinguish the various sections and themes instantly and without effort and be capable of immediately identifying such themes and their recurrence from the beginning to the end of each theme in each instance."

The claims in issue are unpatentable, and the bill should be dismissed.

Counsel for defendant will submit formal and detailed findings of fact and state conclusions in accord herewith pursuant to Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, together with appropriate judgment dismissing the bill of complaint.